# IN THE COURT OF APPEALS OF IOWA

No. 20-0577
Filed June 17, 2020

IN THE INTEREST OF A.W.,
Minor Child,

A.W., Father,
    Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mark C. Cord III, District Associate Judge.

A father appeals the termination of his parental rights to his three-year-old son. **AFFIRMED.**

T. Cody Farrens of Fankhauser, Farrens & Rachel PLC, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Marchelle Denker, Sioux City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

A.W.'s father, Alec, missed the termination-of-parental-rights hearing because he was engaged in inpatient treatment for his methamphetamine addiction. His attorney told the juvenile court, "[H]e thought long-term he's better off focusing on himself right now." The court terminated Alec's rights under Iowa Code section 232.116(1), paragraphs (h), (i), and (*l*) (2019).[1] He now challenges the grounds for termination and asks for a delay in permanency. Alec also argues termination is not in A.W.'s best interests.

After our independent review of the record, we affirm the termination under paragraph (*l*).[2] Like the juvenile court, we believe it would be in A.W.'s best interests "to terminate the parent-child relationships so that he will have the opportunity to grow and mature in a safe, healthy and stimulating environment."

When A.W. was ten months old, the Iowa Department of Human Services (DHS) opened a child abuse investigation into a report that Alec and April were neglecting him. That August 2017 report alleged "the parents often sit [A.W.] in the baby bouncer behind them as they play video games in a dark room and give

---

[1] The court also terminated the parental rights of A.W.'s mother, April. She is not a party to this appeal.

[2] We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The juvenile court's factual findings are not binding, but they deserve weighty consideration. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We will uphold a termination order only if clear and convincing evidence supports at least one of the statutory grounds. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing "is the highest evidentiary burden in civil cases. It means there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016). We impose this significant burden on the petitioning party "to minimize the risk of an erroneous deprivation of the parent's fundamental liberty interest" in raising his or her child. *Id.*

him minimal interaction." A.W. was not yet crawling. And his grandfather was concerned he was "not getting attention, stimulation, or nurturing."

The investigation unmasked Alec's drug abuse. Alec told DHS workers he was receiving treatment for an addiction to pain killers. But he testified positive for methamphetamine. He also admitted using methamphetamine while caring for A.W. The DHS entered a founded child abuse report. In response, the family accepted voluntary services for several months.

Yet by spring 2018, the family was still struggling. A child protective worker found A.W.'s home in disarray. Alec again admitted frequent methamphetamine use, even while receiving a daily dose of methadone for his opiate addiction. The DHS implemented a safety plan, which included Alec and A.W. moving in with Alec's father. Alec also agreed to a substance-abuse evaluation. The evaluation led to his diagnosis of severe amphetamine-type use disorder and severe opioid use disorder. The evaluator recommended intensive outpatient treatment.

Given the concerns about Alec's drug abuse, in July 2018, the juvenile court adjudicated A.W. as a child in need of assistance (CINA). In the following months, Alec progressed in his recovery. He participated in outpatient treatment and cooperated with service providers. So in February 2019, the court placed A.W. in Alec's care with continued DHS supervision. But that spring, Alec lost his positive momentum. He did not have work or stable housing. Come summer, Alec twice tested positive for methamphetamine use. He began extended outpatient treatment, but his spotty attendance led to an unsuccessful discharge. Alec tried outpatient drug treatment again in November 2019 with the same lack of success.

It was not until family members secured a commitment order that Alec entered inpatient treatment in late January 2020.

Meanwhile, in December 2019, the State petitioned to terminate parental rights. The juvenile court held a hearing in February 2020. Alec, through his attorney, asked for additional time to work toward reunification. Counsel was candid: "It took my client a long time to get into an inpatient facility. There's no doubt about that. But the fact of the matter is, he's there now." Unpersuaded by Alec's eleventh-hour efforts, the State argued,

> It's great that Alec finally entered inpatient almost two years into the court case and two and a half years into first becoming involved with the Department on a voluntary basis in 2017, but I think it's a little too late for him to be taking that step and there should not be a delay in permanency to wait to see how he reacts to doing inpatient at this late stage.

The juvenile court agreed with the State, terminating Alec's parental rights under Iowa Code section 232.116(1), paragraphs (h), (i), and (l). On appeal, Alec contests all three grounds for termination.[3] He asks for more time to reunify. And he insists it would be in A.W.'s best interests to preserve the parental bond. *See* Iowa Code § 232.116(2).

We start with Alec's challenge to the statutory grounds for termination. When the juvenile court relies on more than one statutory ground, we may affirm

---

[3] The State contends Alec did not preserve error on his appellate claims because he failed to appear at the termination hearing and his attorney presented no evidence. We see merit in this preservation argument. *See In re P.S.,* No. 11-0516, 2011 WL 2714169, at *1 (Iowa Ct. App. July 13, 2011) (finding error not preserved where father was represented by counsel but did not object to evidence presented, offer evidence, or raise any other issues for the juvenile court). Yet because the father's counsel did argue to delay permanency, we opt to reach the merits.

the termination order on any ground supported by the record.[4] *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find paragraph (*l*) supported by clear and convincing evidence.

That ground has three elements: (1) the child has been adjudicated CINA under section 232.96 and the court has transferred custody from the child's parents; (2) the parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts; and (3) clear and convincing evidence shows the parent's prognosis will prevent the child from returning to the parent's custody within a reasonable time considering the child's age and need for permanency. Iowa Code § 232.116(1)(*l*). Alec mounts no challenge to the first two elements. He disputes only the third element, contending he can overcome his addiction and reunify with A.W. within a reasonable time.

Alec acknowledges his use of illicit substances, especially methamphetamine, has been the top concern in this CINA case. But he does not concede he waited until the last minute to get help. Instead, he blames "institutional barriers" preventing him from seeking the necessary inpatient care.

We appreciate the pernicious nature of addictions. And we applaud Alec for now tackling his through inpatient treatment. But our primary concern is A.W. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The child has been adjudicated as a CINA for nearly two years. In January 2020, the DHS had to suspend A.W.'s visits with Alec because of the father's ongoing substance abuse. Alec has not yet

---

[4] The State defends the juvenile court's decision under paragraphs (i) and (*l*), but not (h), presumably because the evidence did not support the removal times outlined in that provision.

shown steady progress in addressing his severe substance-abuse related disorder. Alec's family was worried enough about his welfare to seek a substance-abuse commitment. From this circumstance, we find Alec's unchecked addiction poses a danger to himself, as well as A.W. *See In re J.K.*, 495 N.W.2d 108, 111 (Iowa 1993). Like the juvenile court, we find Alec's prognosis prevents the DHS from safely returning A.W. to his care within a reasonable time. *See* Iowa Code § 232.116(1)(*l*). Our finding focuses on the fact that A.W. is still a preschooler and needs a stable environment to keep meeting his developmental milestones. We affirm the termination of parental rights under paragraph (*l*).

While not framing it as a separate claim, Alec urges in his petition on appeal that he should be "afforded more time." To continue a child's placement, Iowa Code section 232.104(2)(b) requires the court to determine the need for removal will no longer exist at the end of the extension. The juvenile court was "not convinced that anything would change in six months." We share that skepticism. The record does not support a finding that need for removal would no longer exist at the end of a six-month extension.

Finally, we turn to best interests. In deciding what is in A.W.'s best interests, we consider his safety, the most advantageous placement for furthering his long-term nurturing and growth, as well as his physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (discussing factors in Iowa Code section 232.116(2)). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *J.E.*, 723 N.W.2d at 802 (Cady, J., concurring specially). Alec argues termination is not in A.W.'s best interests because the child has been in the care of his paternal grandfather. In Alec's view,

"there is no functional difference for the child between a termination placing his care with his grandfather and placing the child with his grandfather while Alec continues to work on reunification." We disagree. Termination of Alec's parental rights allows A.W. to have a more permanent home with a caregiver committed to his long-term nurturing. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (finding termination would enable child in the care of her grandmother to achieve permanency). And contrary to Alec's assertion, A.W.'s placement with his grandfather does not diminish the urgency of his need for permanency. Alec relies on *In re B.M.*, No. 13-1704, 2013 WL 6700309, at *4–5 (Iowa Ct. App. Dec. 18, 2013). But that case featured other factors supporting an extension of the parent's time to reunify.

Finding no basis for reversal, we affirm the termination of parental rights.

**AFFIRMED.**